**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:21-CR-81** |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **DAVID BRUCE DARBY,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Defendant David Bruce Darby, proceeding *pro se*, moves the court to dismiss the indictment against him, to suppress evidence related to a wiretap of his phone, and to compel production of certain discovery. Darby also moves the court to sever his trial from the trial of codefendant Malik Bonds and for early disclosure of information related to his sentencing guidelines. We will grant in part and deny in part Darby's motions.

## I.   Factual Background and Procedural History

Two factual matters underly Darby's motions: his successive indictments in state and federal court and an order issued by the Superior Court of Pennsylvania authorizing a wiretap of a cell phone utilized by Darby.

### A.   State and Federal Indictments

Darby was first charged at the state level on December 16, 2019, when Attorney Robert Smulktis, Esquire, acting in his capacity as Deputy Attorney General for the Pennsylvania Office of Attorney General, obtained a presentment recommending charges against Darby, Bonds, and several others involved in Darby's alleged drug-trafficking operation. (See Doc. 53 at 22-61). Darby was

charged in Franklin County, Pennsylvania, with 21 counts: (1) corrupt organizations (two counts), (2) criminal conspiracy, (3) possession with intent to distribute a controlled substance (two counts), (4) distribution of a controlled substance (14 counts), (5) drug delivery resulting in death, (6) persons not to possess a firearm, and (7) dealing in proceeds of unlawful activity.  (See Doc. 48 at 1; Doc. 51 at 14).  Law enforcement arrested Darby four days later.  (See Doc. 48 at 1; Doc. 51 at 14).

After several delays caused by the COVID-19 pandemic and a request by Darby's counsel to withdraw, (see Docs. 53-3, 53-4), Darby asserted his right to proceed to trial on October 19, 2020, (see Doc. 48 at 1; Doc. 51 at 15; see also Doc. 53-9).  However, the government requested an additional continuance on the grounds that it was not prepared for trial and needed additional time to determine whether the federal government intended to assume jurisdiction over the prosecution of Darby.[1]  (See Doc. 53-9).  The court granted the continuance.  (See id.)  After further delay caused by, *inter alia*, Darby requesting appointment of new counsel, (see Docs. 53-10 to 53-17), Darby reasserted his intent to proceed to trial on February 23, 2021, (see Doc. 48 at 5; Doc. 51 at 17).  The court acknowledged Darby's desire not to delay trial but granted the continuance on account of the ongoing pandemic.  (See Doc. 53-19).

On March 24, 2021, Attorney Smulktis, now acting in his capacity as Special Assistant United States Attorney, obtained the present federal indictment against

---

[1] The government disputes the sincerity of Darby's October 19, 2020 request to go to trial.  (See Doc. 51 at 22).  It points out that Darby filed a *pro se* motion to appoint substitute counsel on October 26, 2020, only seven days after requesting to go to trial.  (See Doc. 53-10).

Darby and his state-level codefendant Bonds.  The indictment charges Darby in

29 counts with the following crimes: (1) conspiracy to distribute fentanyl and

oxycodone, (2) possession with intent to distribute oxycodone (two counts), (3)

distribution of cocaine, (4) distribution of fentanyl (six counts), (5) distribution of

fentanyl resulting in serious bodily injury to one person and death of another

person, (6) distribution of oxycodone (five counts), (7) possession of firearms by a

felon, (8) possession of a firearm in furtherance of a drug-trafficking crime, and (9)

money laundering (eleven counts).  (See Doc. 1).  The government admits Attorney

Smulktis sought the federal indictment after plea negotiations failed in the state-

level prosecution.  (See Doc. 51 at 21-22).

### B.   Wiretap Order

Darby was the subject of several surveillance orders prior to his arrest.

Relevant to Darby's motion, Pennsylvania Superior Court Judge Victor P. Stabile

issued an order authorizing interception of wire and electronic communications

transmitted to and from the phone number (717) 977-7336, which was associated

with Darby's cell phone ("the wiretap order").  (See Doc. 55-6).  Agent Michael

Carlson of the Pennsylvania Office of Attorney General authored the affidavit of

probable cause in support of the wiretap application.  (See Aff.[2] at 1).  Agent

Carlson's affidavit avers Darby is the leader of a drug-trafficking ring specializing in

distribution of oxycodone.  (See id. ¶ 14).  According to the affidavit, a tip to the

Franklin County Drug Task Force by a known informant on October 29, 2018, first

---

[2] Agent Carlson's affidavit spans several separate docket entries.  (See Docs. 55, 55-1, 55-2).  For ease of reference, we cite to the affidavit as "Aff."

brought Darby's alleged drug-trafficking activities under law enforcement scrutiny. (See id. ¶ 29). The informant reported Darby's girlfriend, Sarah Catherine Turesky, was travelling to New York City multiple times a week to obtain oxycodone and then reselling the oxycodone out of Darby's two residences in the Chambersburg area of Franklin County. (See id.) The informant explained that Turesky was trafficking in oxycodone at the behest of Darby, who was then an inmate in York County Prison and regularly called Turesky from prison with instructions for maintaining the drug-trafficking operation in his absence. (See id.)

The Office of Attorney General and the Franklin County Drug Task Force subsequently launched an investigation into Darby's activities that ultimately confirmed the accuracy of the tip. (See id. ¶¶ 29-64). Over the next several months, the investigation developed into an extensive operation, employing in-person and digital surveillance, as well as reviewing prison phone conversations, other phone records, and Western Union transactions to track Darby's drug-trafficking activities while an inmate and after his release in December 2018. (See id. ¶¶ 8-12). Based on the affidavit, Judge Stabile found probable cause that Darby was involved in criminal activity and the phone in question was being used to facilitate those crimes. (See Doc. 55-6 at 2-3).

### C.   Procedural History

Darby is presently proceeding *pro se* and has filed several pretrial motions. Darby first filed an omnibus motion to dismiss the federal indictment for vindictive prosecution, to suppress evidence obtained via the wiretap order, and to compel production of certain discovery. Darby thereafter filed two additional motions: a

motion to sever his case and Bond's case for trial, and a motion for early disclosure of sentencing information.  Darby's motions are now ripe for disposition.

II.  **Discussion**

A.  **Motion to Dismiss**

Darby argues the federal charges against him are the product of vindictive prosecution.  (See Doc. 48 at 3-5).  A prosecutor violates due process when they punish a defendant vindictively for "doing what the law plainly allows [the defendant] to do," *i.e.*, exercising a protected statutory or constitutional right.  See United States v. Goodwin, 457 U.S. 368, 372, 384 (1982).  A defendant can prove vindictive prosecution one of two ways: (1) showing facts sufficient to give rise to a "presumption of vindictiveness" or (2) providing evidence demonstrating the prosecutor's actions were motivated by "actual vindictiveness."  See United States v. Paramo, 998 F.2d 1212, 1220 (3d Cir. 1993) (citing Goodwin, 457 U.S. at 374, 380 n.12).  The presumption of vindictiveness arises only in the narrow set of circumstances where "a reasonable likelihood of vindictiveness exists."  See United States v. Esposito, 968 F.2d 300, 303 (3d Cir. 1992) (citing Blackledge v. Perry, 417 U.S. 21, 27 (1974)).  Once the presumption applies, the prosecution is barred from engaging in the vindictive conduct—most often pursuing additional charges, more serious charges, or more severe punishment—unless the prosecution "proffer[s] legitimate, objective reasons for its conduct."  See id. at 303, 305 (citing United States v. Andrews, 633 F.2d 449, 456 (6th Cir. 1980)).

Absent application of the presumption, the defendant must present evidence showing actual vindictiveness.  See Esposito, 968 F.2d at 303 (citing Wasman

v. United States, 468 U.S. 559, 569 (1984)); United States v. Sellers, 501 F. App'x 194, 197 (3d Cir. 2012) (nonprecedential) (citing United States v. Spears, 159 F.3d 1081, 1086 (7th Cir. 1998)).  The emphasis of the inquiry is on whether the prosecution intended to retaliate against the defendant for exercising a legal right, not on whether the prosecution's actions might deter the defendant from exercising their legal rights.  See Esposito, 968 F.2d at 303.

Darby claims the government indicting him on federal charges after he asserted his right to a jury trial in state court should trigger the presumption of vindictiveness.  (See Doc. 48 at 4-5).  He is mistaken.  As a threshold matter, the presumption generally does not apply to pretrial prosecutorial conduct.  See Sellers, 501 F. App'x at 197 (citing, *inter alia*, Goodwin, 457 U.S. at 384).  But more importantly, in United States v. Goodwin, 457 U.S. 368 (1982), the Supreme Court rejected this precise argument.  The Goodwin Court explained that the possibility a prosecutor would bring additional charges solely as punishment for a defendant's demand for a jury trial is "so *unlikely*" that the presumption "certainly is not warranted."  See Goodwin, 457 U.S. at 384 (emphasis in original).

Nonetheless, Darby insists Attorney Smulktis acting as lead prosecutor in both his state and federal cases creates a reasonable likelihood of vindictiveness.  (See Doc. 48 at 1-2, 4).  Our court of appeals has never squarely confronted this situation, but it holds the federal and state governments are "separate sovereigns" who may freely bring "increased charges or simultaneous prosecutions for similar or identical offenses" without giving rise to prosecutorial vindictiveness.  See United States v. Oliver, 787 F.2d 124, 126 (3d Cir. 1986).  When other courts of

appeals have examined vindictive prosecution arguments in contexts similar to Darby's, they have either firmly rejected Darby's contention, see United States v. Raymer, 941 F.2d 1031, 1042-43 (10th Cir. 1991) ("[W]e must reject the idea that the presence of the state prosecutor in the federal case warrants a presumptive inference of vindictiveness."), or rejected the defendant's overall vindictive prosecution argument without singling out the dual role of the prosecutor as possessing any special significance, see United States v. Williams, 47 F.3d 658, 663 (4th Cir. 1995); United States v. Encinias, 123 F. App'x 924, 933 (10th Cir. 2005) (nonprecedential).  We find these cases to be persuasive and we hold that the presumption of vindictiveness does not apply under the instant circumstances.

Darby must provide evidence showing actual vindictiveness on the part of the government.  See Esposito, 968 F.2d at 303; Sellers, 501 F. App'x at 197.  Here, the government admits to seeking Darby's federal indictment (and accompanying harsher penalties) after plea negotiations failed at the state level.  (See Doc. 51 at 21-22).  But this change in the jurisdiction of prosecution, standing alone, does not constitute vindictiveness..  The government possesses broad discretion in carrying out the prosecution of a defendant, especially in the plea-bargaining process.  See Bordenkircher v. Hayes, 434 U.S. 357, 363-64 (1978).  And the risk that greater penalties may be imposed on a defendant because they refuse a plea bargain is both "inevitable" and "permissible" within that process.  See id. at 364.  The prosecutor's desire to "persuade the defendant to forgo his right to plead not guilty" is "constitutionally legitimate."  See id.  Thus, subjecting a defendant to federal indictment after he refuses to cooperate or plead guilty at the state level does not

constitute vindictiveness.  See Oliver, 787 F.2d at 126.  In the case *sub judice*, the prosecution did not hide the possibility of federal indictment from Darby.  See id. To the contrary, the state court apprised Darby the federal government was considering bringing an indictment against him, (see Doc. 53-9 at 1:21-25), and Darby admits his state-level prosecutors "made mention" of the federal government "[p]icking [u]p" his case on at least two occasions, (see Doc. 48 at 2).  We find there is simply no evidence, direct or circumstantial, suggesting the government violated the limits of its discretion by seeking and obtaining a federal indictment.  We will deny Darby's motion to dismiss.

### B.   Motion to Suppress

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III") sets strict parameters for issuance of orders authorizing interception of wire, oral, or electronic communications.  See 18 U.S.C. § 2518.  A judge may issue an order authorizing a wiretap only if the judge determines, based on the affidavit of the applicant, that:

> (a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter;
>
> (b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interceptions;
>
> (c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;
>
> (d) except as provided in subsection (11), there is probable cause for belief that the facilities from which, or the place

>where, the wire, oral, or electronic communications are to
>be intercepted are being used, or are about to be used, in
>connection with the commission of such offense, or are
>leased to, listed in the name of, or commonly used by such
>person.

Id. § 2518(3)(a)-(d).

Title III includes its own statutory suppression mechanism. See id. § 2518(10). An "aggrieved person" may move to suppress the contents of any intercepted communication if (1) the communication was "unlawfully intercepted," (2) the order authorizing or approving the wiretap "is insufficient on its face," or (3) the interception did not conform with the order authorizing or approving the wiretap. Id. § 2518(10)(a). Darby argues his communications were "unlawfully intercepted" under Section 2518(10)(a)(i) because the wiretap application failed to meet Title III's probable-cause requirements. (See Doc. 40 at 4-7).

Courts assess probable cause under Title III using the same Fourth Amendment principles applicable to traditional searches. See United States v. Tehfe, 722 F.2d 1114, 1117-18 (3d Cir. 1983); see also United States v. Robinson, 513 F. Supp. 2d 169, 189 (M.D. Pa. 2007) (citing Tehfe, 722 F.2d at 1118). Those principles task the government to demonstrate "a fair probability" that a crime has been, is being, or is about to be committed. See Illinois v. Gates, 462 U.S. 213, 238 (1983); see also 18 U.S.C. § 2518(3)(a). Whether probable cause exists is an objective determination based on the totality of the circumstances present at the time of the challenged governmental conduct. See United States v. Williams, 413 F.3d 347, 353 n.6 (3d Cir. 2005). Probable cause "is not a high bar." Kaley v. United States, 571 U.S. 320, 338 (2014).

Judge Stabile found probable cause that Darby was violating Pennsylvania's Drug, Device and Cosmetic Act, 35 PA. STAT. AND CONS. STAT. ANN. § 780-113(a)(12), (16) and (30), as well as other Pennsylvania statutes involving corrupt organizations, 18 PA. CONS. STAT. § 911; dealing in proceeds of unlawful activity, id. § 5111; and criminal conspiracy, id. § 903.  (See Doc. 55-6 at 2-3).  The affidavit of probable cause supporting the wiretap order includes 314 factual paragraphs connecting Darby and his phone to criminal activity.  Contrary to Darby's assertions, the affidavit provides abundant information establishing probable cause to believe Darby was involved in drug-trafficking activity and using his phone to facilitate that activity.  The affidavit describes hundreds of recorded phone calls made by Darby from prison to Turesky instructing her how to operate his drug-dealing business in his absence, (see, e.g., id. ¶¶ 36, 38-39, 40, 41, 47, 64, 95, 118), and pen register records marking hundreds of conversations between Darby's phone and known participants in the drug trade, (see, e.g., id. ¶¶ 131-150, 173-174, 283-306).  The affidavit documents extensive surveillance of Darby and Turesky travelling to New York City to obtain oxycodone and known drug users visiting Darby's residences shortly after Darby's or Turesky's return.  (See, e.g., id. ¶¶ 51, 93-94, 113-114, 126, 130, 156, 185).  Additionally, the affidavit shows Darby's and Turesky's trips to New York City coincided with Darby or Turesky sending significant sums of money via Western Union to certain individuals in the New York City area identified in Darby and Turesky's conversations as suppliers of oxycodone or connected to suppliers.  (See, e.g., id. ¶¶ 38-39, 66-67, 120, 151, 194).  It also describes numerous text message

conversations in which Darby offers to sell oxycodone to a confidential informant,[3]

(see, e.g., id. ¶¶ 119, 122, 203, 240, 244), and documents several controlled sales to

that informant, (see id. ¶¶ 119, 124-125, 193, 202).  We conclude the wiretap order

was supported by probable cause to believe Darby was engaged in the distribution

of controlled substances and that he was using his phone to facilitate that activity.

We will deny Darby's motion to suppress.

      **C.**    **Motions to Compel Production**

      Darby moves to compel the government to produce certain evidence.  Darby

first seeks any recordings of Darby's telephone or face-to-face conversations held by

the government.  (See Doc. 47 at 4; Doc. 55 at 7-8).  The government agrees Darby is

entitled to these recordings.  (See Doc. 51 at 32-33).  We will order the government

to confer with Darby forthwith to ensure Darby has an opportunity to review all

recordings to which he is entitled.

      Darby also seeks transcripts of all witness testimony given at the federal

grand jury proceeding that produced the instant indictment.[4]  (See Doc. 47 at 5-6).

However, transcripts of testimony before a grand jury by parties other than the

---

[3] Darby attacks the affidavit's reliance on the confidential informant, alleging the affidavit lacks sufficient indications of the informant's reliability.  (See Doc. 48 at 7).  The affidavit contains copious information from which Judge Stabile could have inferred the informant's reliability.  To be sure, the affidavit is so dense with compelling information inculpating Darby in drug trafficking that it would establish probable cause even if we excised the information provided by the informant.

[4] Darby also requests all statements made by anyone known to the government that contradict the testimony of the witnesses before the grand jury. (See Doc. 47 at 6).  We view the government's disclosure obligation under Brady v. Maryland, 373 U.S. 83, 87 (1963), as rendering this request redundant.  (See Doc. 12).

defendant cannot be disclosed prior to trial, see United States v. Murphy, 569 F.2d 771, 774 (3d Cir. 1978), barring a showing of "particularized need," see Douglas Oil Co. of Cal. v. Petrol Stops Nw., 441 U.S. 211, 222 n.12, 228 (1979), or that "a ground may exist to dismiss the indictment," see FED. R. CRIM. P. 6(e)(3)(E)(iii).  Darby has not made either showing.[5]  We will deny the motion.

### D.     Motion to Sever

Darby also moves for severance from his codefendant Malik Bonds.  (See Doc. 62).  Darby argues Bonds' filing of motions for continuance has prejudiced Darby by delaying his trial.  (See id. at 1-2).  To the contrary, Bonds' counsel has advised the court Bonds is prepared to proceed to trial.  (See Doc. 66 ¶ 6).  Darby's pretrial motions are the cause of the delay in scheduling this matter for trial.  As this memorandum and accompanying order resolve all of Darby's pending motions, Darby's basis for severance is moot.  We will confer with the parties forthwith to schedule this case for trial.

### E.     Motion for Early Disclosure

Lastly, Darby moves for early disclosure of information related to his sentencing guidelines.  (See Doc. 63).  In our order of May 3, 2022, we explained to Darby that his motions must be accompanied by a separate supporting brief as required by Local Rule of Court 7.5 and warned that failure to file a supporting brief

---

[5] Darby suggests "pretrial disclosure of Grand Jury testimony will assist the court in the credibility determination which will arise at the evidentiary hearing on Defendant's Motion to Suppress and Motion to Dismiss."  (See Doc. 47 at 5).  We find no need for an evidentiary hearing and have resolved both motions on the existing record, thus mooting this basis for Darby's request.

as required would result in the court deeming his motion withdrawn.  (See Doc. 64 at 1 n.1 (citing M.D. PA. L.R. 7.5)).  Darby's motion for early disclosure did not comply with this Local Rule, and Darby has not filed a separate supporting brief since we entered our order.  Accordingly, we will deem Darby's motion to be withdrawn, without prejudice to Darby refiling the motion with an appropriate supporting brief.

## III.  <u>Conclusion</u>

We will grant in part and deny in part Darby's motions.  An appropriate order shall issue.

<u>/S/ CHRISTOPHER C. CONNER</u>
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    May 31, 2022