IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | **CRIMINAL NO. 1:21-CR-81** |
| : | |
| **v.** : | **(Judge Conner)** |
| : | |
| **DAVID BRUCE DARBY,** : | |
| : | |
| **Defendant** : | |

# MEMORANDUM

A jury convicted defendant David Bruce Darby of more than two dozen drug, firearm, and money laundering offenses. Darby now moves for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 or, in the alternative, for a new trial pursuant to Rule 33.[1] We will deny Darby's motions.

## I. Factual and Procedural History

A federal grand jury indicted Darby on March 24, 2021, charging him with 29 offenses: one count of conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846 (Count 1); 15 counts of violating 21 U.S.C. § 841(a)(1) and (b)(1)(C), including two counts of possession with intent to distribute oxycodone (Counts 2 and 17), one count of distribution of cocaine (Count 4), one count of distribution of fentanyl resulting in death (Count 5), six counts of distribution of fentanyl (Counts 6-11), and five counts of distribution of oxycodone (Counts 12-16); one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g) (Count 18); one count of

---

[1] Darby also has a pending motion (Doc. 142) to dismiss Count 18 of the indictment on constitutional grounds, which we will address separately pursuant to our January 17, 2024, order (Doc. 158).

possession of a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 19); and 11 counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i) (Counts 20-30).  (See Doc. 1).[2]

A seven-day bifurcated trial commenced on January 22, 2024.  (See Doc. 194, 1/22/24 Trial Tr. 1:1-13).[3]  At the close of the government's case-in-chief, Darby moved *pro se*[4] for judgment of acquittal on Counts 5 through 11.  (See Doc. 198, 1/26/24 Trial Tr. 762:2-763:14, 766:2-4).  The court denied Darby's motion via a bench ruling, (see Doc. 199, 1/29/24 Trial Tr. 771:14-778:8), and Darby did not call any witnesses or present any evidence, (see id. at 783:1-784:17).  On January 30, 2024, the jury acquitted Darby of the money laundering charge in Count 22, but found him guilty on all other counts.  (See Docs. 180, 184).  Darby, acting *pro se*, timely filed a post-conviction motion for judgment of acquittal on all counts of conviction.  (See Doc. 188 ¶¶ 7, 9; see also Doc. 193 at 4).  The court thereafter reappointed

---

[2] Counts 2 and 4 through 30 also charged Darby with aiding and abetting the commission of those offenses in violation of 18 U.S.C. § 2.  (See Doc. 1).  The indictment further charged co-defendant Malik Bonds with conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846 (Count 1), and distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2 (Count 3).  (See Doc. 1).

[3] The court bifurcated trial as to Darby's Section 922(g) charge.  (See Doc. 200, 1/30/24 Trial Tr. 932:17-933:7).

[4] At the time of trial, Darby was represented by court-appointed counsel Elisabeth K. H. Pasqualini, Esquire.  On January 25, 2024, Darby orally requested to dismiss counsel and proceed *pro se*.  (See Doc. 197, 1/25/24 Trial Tr. 469:17-470:12).  The court conducted an *ex parte* hearing on the matter, and ultimately granted Darby's request.  Although we terminated Attorney Pasqualini as trial counsel, we appointed her standby counsel for Darby.  (See Doc. 172; see also Doc. 211, 1/25/24 *Ex Parte* Hr'g Tr. 1:1-18:5).

counsel at Darby's request. (See Doc. 190). His new attorney filed a motion for judgment of acquittal and for a new trial on Counts 1, 2, 4, 17-21, and 23-30. (See Doc. 205 ¶ 4; Doc. 207 at 2; see also Doc. 207 at 1 (requesting that the court "disregard" Darby's *pro se* filing) (citation omitted)).[5] The motions are fully briefed and ripe for disposition.

## II.  Legal Standards

Under Rule 29(a), the court must enter a judgment of acquittal on any offense for which the evidence is insufficient to sustain a conviction. See FED. R. CRIM. P. 29(a). The court must decide whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" based on the evidence presented at trial. See United States v. Caraballo-Rodriguez, 726 F.3d 418, 431 (3d Cir. 2013) (*en banc*) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)); see also United States v. Freeman, 763 F.3d 322, 343 (3d Cir. 2014). The court must view the evidence in the light most favorable to the prosecution and must deny the motion "if there is substantial evidence . . . to uphold the jury's decision." See Caraballo-Rodriguez, 726 F.3d at 430 (quoting United States v. Gambone, 314 F.3d 163, 170 (3d Cir. 2003)). Under this highly deferential standard of review, it is not the court's task to "act as a thirteenth juror," weigh credibility, assign weight to evidence, or "substitut[e] [its] judgment for that of the jury." See id. (citations omitted). A court may only overturn a conviction for insufficient evidence "where

---

[5] Notwithstanding counsel's request to disregard Darby's *pro se* filings, we will address both motions for the sake of completeness.

3

the prosecution's failure is clear," see United States v. Leon, 739 F.2d 885, 890-91 (3d Cir. 1984) (quoting Burks v. United States, 437 U.S. 1, 17 (1978)), or where the verdict is "so insupportable as to fall below the threshold of bare rationality," see Caraballo-Rodriguez, 726 F.3d at 431 (quoting Coleman v. Johnson, 566 U.S. 650, 656 (2012)).

Under Rule 33, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." See FED. R. CRIM. P. 33(a). Granting or denying a motion for a new trial "lies within the discretion of the district court." See United States v. Cimera, 459 F.3d 452, 458 (3d Cir. 2006) (citing United States v. Saada, 212 F.3d 210, 216 (3d Cir. 2000)). A court evaluating a Rule 33 motion does not view the evidence in a light favorable to the government but instead must "exercise[] its own judgment in assessing the Government's case." See United States v. Johnson, 302 F.3d 139, 150 (3d Cir. 2002) (citations omitted). Rule 33 motions are disfavored and should be "granted sparingly and only in exceptional cases." United States v. Silveus, 542 F.3d 993, 1005 (3d Cir. 2008) (quoting Gov't of V.I. v. Derricks, 810 F.2d 50, 55 (3d Cir. 1987)). Exceptional cases include those in which trial errors "so infected the jury's deliberations that they had a substantial influence on the outcome of the trial." See United States v. Thornton, 1 F.3d 149, 156 (3d Cir. 1993) (quoting United States v. Hill, 976 F.2d 132, 145 (3d Cir. 1992)).

### III. Discussion

Darby and his counsel raise a variety of arguments in support of the motions for judgment of acquittal. (See Doc. 188 ¶¶ 7, 9; Doc. 193 at 4-6; Doc. 207 at 3-6).[6] In the alternative, Darby's newly appointed counsel seeks a new trial on Counts 1, 2, 4, 17-21, and 23-30, alleging that the guilty verdicts were against the weight of the evidence. (See Doc. 205 ¶ 4; Doc. 207 at 2). The government responds by asserting that the witnesses and evidence presented at trial overwhelmingly supported the jury's verdict on each count. (See Doc. 209 at 6-42).

### A. Count 1: Conspiracy to Distribute or Possess with the Intent to Distribute Controlled Substances

Darby argues the evidence does not support his conspiracy conviction because the wiretap recordings presented at trial merely showed a buyer-seller relationship between him and co-defendant Bonds. (See Doc. 207 at 4). Count 1, conspiracy to distribute or possess with intent to distribute controlled substances requires the government to prove the following: (1) that two or more persons agreed to distribute or possess with the intent to distribute controlled substances, (2) that Darby was a party to or member of that agreement, and (3) that he joined the agreement or conspiracy knowing of its objective to distribute and possess with the intent to distribute controlled substances, and intending to join together with at least one other alleged conspirator to achieve that objective. See 21 U.S.C. § 846;

---

[6] We note that courts have a duty to "liberally construe *pro se* filings with an eye toward their substance rather than their form." See United States v. Delgado, 363 F. App'x 853, 855 (3d Cir. 2010) (nonprecedential) (citing United States v. Miller, 197 F.3d 644, 648 (3d Cir. 1999)).

5

United States v. Iglesias, 535 F.3d 150, 156 (3d Cir. 2008); see also United States v. Shabani, 513 U.S. 10, 17 (1994) (no overt act required to prove violation of 21 U.S.C. § 846).

The government's evidence against Darby on Count 1 was overwhelming. Prosecutors presented wiretap recordings of phone calls from August 17 and 21, 2019, during which Darby and Bonds discussed selling cocaine—using "hard" and "soft" as code terms for crack and powder, respectively—to a third-party for profit. (See Doc. 196, 1/24/24 Trial Tr. 252:6-255:11, 256:7-257:13, 258:2-14 (referencing Gov't Exs. 73-76)). In addition, Pennsylvania State Police Trooper Rodney Fink testified that he conducted physical surveillance of Darby selling cocaine to a customer immediately after meeting with Bonds on August 21. (See 1/25/24 Trial Tr. 414:11-419:7). Trooper Fink's observations were corroborated by photographs. (See id. at 419:8-422:23 (referencing Gov't Exs. 105-110)). Furthermore, the government presented ample evidence that Darby was the ringleader of a drug-trafficking operation spanning several states. (See Doc. 195, 1/23/24 Trial Tr. 132:17-133:19; 1/25/24 Trial Tr. 498:18-502:11). Three of his co-conspirators—Sarah Turesky, Alycia Logsdon, and his pill supplier, Delisha Redden—testified for the government at trial and directly inculpated him. (See 1/23/24 Trial Tr. 92:11-93:15, 94:21-100:22 (Turesky testimony); 1/24/24 Trial Tr. 365:3-377:4 (Logsdon testimony); 1/25/24 Trial Tr. 500:17-502:13, 512:12-520:9 (Redden testimony)). We will deny Darby's motions as to Count 1 because the jury's verdict easily meets the requisite "threshold of bare rationality." See Caraballo-Rodriguez, 726 F.3d at 431 (quoting Coleman, 566 U.S. at 656).

6

**B.     Count 2: Possession with Intent to Distribute Oxycodone**

Darby challenges his conviction on Count 2 by claiming he could not have committed the offense on November 10, 2018, because he was incarcerated. (See Doc. 207 at 4). This argument is unavailing. The government may establish Darby's guilt on this count as an aider and abettor by proving that (1) another person committed the substantive offense charged, (2) Darby knew that the person was going to commit the offense, and (3) he acted with the intent to facilitate the other person's commission of the offense. See 21 U.S.C. § 841(a)(1); 18 U.S.C. § 2; United States v. Salmon, 944 F.2d 1106, 1113 (3d Cir. 1991) (citations omitted).

The evidence at trial demonstrated that Darby acted from behind bars with the intent to facilitate Turesky's distribution of oxycodone on November 10, 2018. Indeed, Turesky testified at length regarding Darby's direction and control of her efforts to continue Darby's drug trade during his incarceration. For example, Turesky testified that Darby required her to keep a journal of her drug transactions on his behalf. (See 1/23/24 Trial Tr. 110:4-111:1 (referencing Gov't Ex. 9; see also id. at 119:14-120:6, 123:15-124:1, 125:24-127:13 (referencing Gov't Exs. 10-2, 10-6, 10-14)). She described her use of Darby's car to travel to New York on November 10 to pick up oxycodone pills from his suppliers for redistribution to his customers. (See id. at 111:2-111:23, 118:13-20; see also id. at 117:23-24 (noting there were about "300 pills" in the car after the pickup)). Wiretap recordings of phone calls from that day—during which Darby and Turesky conducted a three-way conversation with one of Darby's pill suppliers (Jonathan Butler aka "Styles") and discussed another supplier ("Karen" Sloane)—easily establishes that Darby controlled and facilitated

7

Turesky's unlawful conduct. (See id. at 111:24-114:24 (referencing Gov't Exs. 22, 23)). We will deny Darby's motions as to this count.

### C. Counts 4-16: Distribution of Controlled Substances

Regarding the distribution offenses, Darby asserts that the government failed to prove the identity of the controlled substances, that he distributed them, or that the substances he distributed caused serious bodily injury to Louise Bertone. (See Doc. 207 at 5; Doc. 193 at 5). Distribution of a controlled substance requires the government to prove: (1) Darby distributed a mixture or substance containing a controlled substance, (2) he distributed the mixture or substance intentionally and knowing that it was a controlled substance, and (3) the controlled substance was, in fact, the controlled substance charged in the indictment. See 21 U.S.C. § 841(a)(1); United States v. Stewart, 179 F. App'x 814, 818-20 (3rd Cir. 2006) (nonprecedential) (identity of substance may be proven through circumstantial evidence) (citing United States v. Dolan, 544 F.2d F.2d 1219, 1221 (4th Cir. 1976)); accord Griffin v. Spratt, 969 F.2d 16, 22 & n.2 (3d Cir. 1992) (collecting cases). Distribution resulting in death or serious bodily injury also requires the government to prove but-for causation. See United States v. Semler, 858 F. App'x 533, 542 (3d Cir. 2021) (nonprecedential) (citing United States v. Robinson, 167 F.3d 824, 832 (3d Cir. 1999)); 21 U.S.C. § 841(b)(1)(C).

We determined at trial that the government "presented an extraordinary amount of evidence" against Darby on Counts 5 through 11, and we incorporate by reference the reasoning from our January 29, 2024, bench ruling. (See 1/29/24 Trial Tr. 771:14-778:8 (citing, *inter alia*, Dolan, 544 F.2d 1219)); see also Robinson, 167

8

F.3d at 832 (affirming distribution resulting in death conviction where defendant "conspired to distribute the heroin and a person to whom it almost immediately was distributed consumed it and died as a result"). The government's evidence as to Count 4 was likewise sufficient. As outlined in our discussion of the conspiracy conviction, see *supra* Part III.A., the evidence on Count 4 included wiretap recordings between Darby and Bonds, testimony from law enforcement agents, and photographs taken by agents while physically surveilling Darby in late August 2019. (See 1/24/24 Trial Tr. 252:6-255:11, 256:7-257:13, 258:2-14 (referencing Gov't Exs. 73-76); 1/25/24 Trial Tr. 414:11-422:23 (referencing Gov't Exs. 105-110)). Accordingly, we conclude that "there is substantial evidence . . . to uphold the jury's decision" on this count. See Caraballo-Rodriguez, 726 F.3d at 430 (quoting Gambone, 314 F.3d at 170).

The evidence against Darby on Counts 12 through 16 was likewise considerable. That evidence included: (1) a wiretap recording of a phone call from August 24, 2019, during which Darby agreed to purchase 70 oxycodone pills from Cedric Stephens, (see 1/24/24 Trial Tr. 261:15-263:6 (referencing Gov't Ex. 77)); (2) another recorded conversation from August 30, 2019, in which Darby discussed bringing money to Stephens in New York, (see 1/26/24 Trial Tr. 714:20-716:10 (referencing Gov't Ex. 178)); (3) text messages between Darby and Stephens, wherein Darby announces his arrival, (see id. at 717:8-718:19 (referencing Gov't Exs. 179-181)); and (4) text messages, wiretap recordings, and video recordings revealing that Darby advertised pills for sale immediately after meeting Stephens, coordinated selling pills to his customers, and did, in fact, meet with customers and

distribute the pills, (see id. at 718:20-721:15, 723:7-724:19, 725:14-731:11, 737:19-739:14 (referencing Gov't Exs. 181, 183, 184, 186-189, 191-194, 199, 200)). Laboratory results presented at trial also confirmed that a sample of the pills seized from Darby tested positive for oxycodone. (See id. at 731:19-733:6 (referencing Gov't Ex. 201)). Hence, we will deny Darby's motions as to Counts 12 through 16.

### D. Count 17: Possession with Intent to Distribute Oxycodone

Darby next claims the evidence failed to demonstrate he intended to distribute oxycodone rather than merely possess it for personal use on September 22, 2019. (See Doc. 207 at 5; Doc. 193 at 5). Our court of appeals has held that the government may prove a defendant's intent to distribute through circumstantial evidence, such as the quantity of drugs, the manner of packaging, and the presence of drug paraphernalia or firearms. See Johnson, 302 F.3d at 149 (citations omitted). Both direct and circumstantial evidence at trial demonstrated that Darby possessed oxycodone pills with the intent to distribute them on the date in question.

As discussed, wiretap recordings, text messages, and evidence obtained from law enforcement's physical surveillance efforts revealed that Darby regularly purchased large quantities of oxycodone pills from suppliers for redistribution to his customers. See *supra* pp. 5-10. At one point during a recorded conversation, Darby described himself as "the biggest mother fucking pill dealer in fucking Chambersburg." (See 1/26/24 Trial Tr. 739:18-740:3 (referencing Gov't Ex. 197)). Law enforcement witnesses testified that they conducted a traffic stop of Darby on September 22, 2019, during which they searched his car and recovered a bottle of oxycodone pills. (See 1/25/24 Trial Tr. 451:21-454:4; 1/26/24 Trial Tr. 655:23-659:13,

10

678:23-686:25 (referencing Gov't Exs. 177, 202, 218-221)). The pill bottle reflected a prescription to someone in New York and part of its label had been torn off. (See 1/26/24 Trial Tr. 678:23-679:10, 680:15-681:13 (referencing Gov't Ex. 218)). During the traffic stop, Darby eventually admitted he purchased these pills "on the street" and altered the label himself. (See 1/25/24 Trial Tr. 453:8-454:4; 1/26/24 Trial Tr. 656:8-18, 680:19-24). Considering the government's case *in toto*, a reasonable jury could quite easily conclude that Darby possessed oxycodone on September 22 with the intent to distribute it.

### E.  Count 18: Unlawful Possession of a Firearm

As to Darby's Section 922(g) conviction, he argues the government did not establish that the firearms were operable. (See Doc. 207 at 5 (citing 18 U.S.C. § 921(a)(3)); Doc. 193 at 6). Our court of appeals has explained that "the federal firearms statute does not require the government to prove that a firearm is operable." See United States v. Nelson, 483 F. App'x 677, 681 n.9 (3d Cir. 2012) (nonprecedential) (citing 18 U.S.C. § 921(a)(3); United States v. Adams, 137 F.3d 1298, 1300 (11th Cir. 1998) ("[E]very circuit addressing the issue has reached the same conclusion.")). Darby's challenge to Count 18 is therefore meritless.

### F.  Count 19: Possession of a Firearm in Furtherance of a Drug Trafficking Crime

Darby raises the same operability argument regarding his Section 924(c) conviction, and he further contends that the evidence does not show he used a firearm in furtherance of drug trafficking. Count 19 requires the government to prove beyond a reasonable doubt that Darby's "possession of the firearm advanced

11

or helped forward a drug trafficking crime." See United States v. Sparrow, 371 F.3d 851, 853 (3d Cir. 2004), as amended (Aug. 3, 2004) (citations omitted).  Relevant factors to consider in making this determination include:

> the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.

See id. (citations omitted).

In the matter *sub judice*, nearly all factors weigh heavily against Darby. The evidence at trial demonstrated that Darby trafficked in cocaine, oxycodone, and fentanyl. See *supra* pp. 5-11. He bought these drugs for resale from suppliers spanning three states—Florida, New York, and Pennsylvania. See id. When Darby learned that his customers had robbed him in November 2018, he unequivocally instructed his co-conspirator, Turesky, to carry his firearms ("clappers") for protection during drug deals. (See 1/23/24 Trial Tr. 129:10-130:24 (referencing Gov't Ex. 26); see also id. at 104:10-108:13 (instructing Turesky to "take the deuce deuce" in September 2018) (referencing Gov't Exs. 18, 19)). Darby's willingness to personally carry loaded firearms was evidenced by an incident in December 2018, during which he shot himself in the hand. (See id. at 130:25-131:25; 1/22/24 Trial Tr. 70:18-73:15 (referencing Gov't Ex. 44)). He also had easy access to the firearms because he stored them alongside ammunition in a shoebox in his closet. (See 1/23/24 Trial Tr. 134:11-140:7 (referencing Gov't Exs. 32-39)). And he does not contest that federal law prohibited him from lawfully possessing firearms as a

convicted felon, (see Doc. 193 at 6; Doc. 207 at 5)—though he separately challenges the constitutionality of that prohibition, (see Doc. 142). We will deny Darby's sufficiency challenge as to Count 19.

### G. Counts 20, 21, and 23-30: Money Laundering Offenses

Lastly, Darby challenges his ten money laundering convictions by claiming that the evidence did not show the relevant financial transactions involved proceeds from unlawful activity. (See Doc. 207 at 6; Doc. 193 at 6). Those offenses required the government to prove, *inter alia*, that the financial transactions at issue involved proceeds from specific unlawful activities, and that Darby was aware that some of the proceeds involved in the transactions were from some form of unlawful activity. See 18 U.S.C. § 1956(a)(1)(A)(i); United States v. Omoruyi, 260 F.3d 291, 294-95 (3d Cir. 2001) (citations omitted). The government may meet its burden by presenting "[e]vidence that a defendant was engaged in drug trafficking and had insufficient legitimate income to produce the money used in a transaction." See United States v. Richardson, 658 F.3d 333, 338 (3d Cir. 2011) (quoting United States v. Stewart, 256 F.3d 231, 249 (4th Cir. 2001)).

The government's comprehensive evidence at trial demonstrated that Darby, personally or through an accomplice, sent money via Western Union to his co-conspirators on the dates for each count of conviction. The evidence further established that each transaction occurred shortly after Darby purchased drugs "on

13

the arm"[7] and trafficked those drugs to his customers. This evidence included (1) numerous video and wiretap recordings, (2) text messages, (3) testimony from Darby's co-conspirators and from law enforcement agents who physically surveilled them, (4) photographs of the drug deals and financial transactions, and (5) receipts from Western Union. (See, e.g., 1/23/24 Trial Tr. 99:8-100:1, 126:14-20; 1/24/24 Trial Tr. 208:13-236:11 (referencing Gov't Exs. 46-70, 208-210)); see also supra pp. 5-13. The government also demonstrated that Darby was in financial debt and did not have enough legitimate income to cover his own basic living expenses, let alone these drug-debt payments to his co-conspirators. (See 1/23/24 Trial Tr. 91:20-93:15, 120:12-123:10; 1/25/24 Trial Tr. 502:1-11, 516:5-517:3). In sum, the record contains copious evidence of Darby's money laundering. We will deny Darby's motions as to these counts.

### H.   Counts 1, 2, 4, 17-21, and 23-30: Motion for New Trial

Darby seeks a new trial on Counts 1, 2, 4, 17-21, and 23-30. His sole contention is that the guilty verdicts on those charges "were against the weight of the evidence." (See Doc. 205 ¶ 4; Doc. 207 at 2). A court considering this kind of challenge must assess the weight of the evidence objectively, see Johnson, 302 F.3d at 150 (citations omitted), and order a new trial "only if it believes that there is a

---

[7] "On the arm" refers to a purchase on credit that is paid for later. (See 1/23/24 Trial Tr. 92:11-93:6).

serious danger . . . that an innocent person has been convicted," see United States v. Salahuddin, 765 F.3d 329, 346 (3d Cir. 2014) (citation and internal quotation marks omitted).  As discussed throughout this opinion, the evidence against Darby on each count of conviction was objectively overwhelming.  It included indisputable wiretap and video recordings—in which Darby explicitly inculpated himself—as well as compelling testimony from his co-conspirators, expert witnesses, and law enforcement agents who physically surveilled him.  See *supra* pp. 5-14.  The sheer amount and variety of the evidence of Darby's criminal conduct severely undercut Darby's efforts to attack the credibility of government witnesses.  That he failed to challenge most of the corroborating documentary evidence, including photographs, text messages, receipts, laboratory reports, and the like, further undermined his defense case.  See id.  Darby has otherwise failed to allege, let alone demonstrate, that his prosecution was the exceptional case where trial errors "so infected the jury's deliberations" that a new trial is warranted.  See Thornton, 1 F.3d at 156 (quoting Hill, 976 F.2d at 145); see also FED. R. CRIM. P. 33(a).

## IV.    Conclusion

For the foregoing reasons, we will deny Darby's motions for judgment of acquittal or for a new trial.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    May 21, 2024